IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Sebrena Hammett, | ) | C/A No.: 3:10-932-MBS-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| South Carolina Department of Health | ) | |
| and Environmental Control, | ) | |
| | ) | |
| Defendant. | ) | |

Sebrena Hammett ("Plaintiff") filed this employment action against her current employer, South Carolina Department of Health and Environmental Control ("DHEC" or "Defendant") on March 15, 2010 in the Richland County Court of Common Pleas. Defendant removed the action to this court on April 14, 2010. [Entry #1]. Plaintiff filed an amended complaint on December 22, 2010, asserting claims for: (1) discrimination in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301-4335 ("USERRA"); (2) hostile work environment in violation of USERRA; (3) discrimination in violation of 42 U.S.C. §§ 1981 and 1983; (4) disparate treatment based on race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"); (5) hostile work environment based on race and sex in violation of Title VII; (6) retaliation in violation of Title VII; and (7) violation of South Carolina Human Affairs Law, S.C. Code Ann. § 1-13-10, *et seq.* [Entry #23].

This matter comes before the court on the following motions: (1) Defendant's motion for summary judgment [Entry #56]; (2) Defendant's motion to dismiss Plaintiff's

USERRA claims [Entry #62]; and (3) Plaintiff's motion for remand [Entry #64]. All of the motions having been fully briefed, this matter is now ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned on January 1, 2012, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motions are dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends that Defendant's motion for summary judgment be granted in part and denied in part, Defendant's motion to dismiss the USERRA claims be denied, and Plaintiff's motion for remand be granted.

I.    Factual Background[1]

Plaintiff is a black female who began working in Defendant's Immunization Division as a temporary employee in 1998 as an Administrative Specialist II. Pl. Dep. 24:4–15.[2] She was hired permanently into that position in 1999. *Id.* Plaintiff had previously joined the U.S. Army Reserves as an officer in 1992 and would take leave to perform her military duties at various times while working for DHEC. In 2004 and 2005, while Plaintiff was on military leave, Defendant opened and hired employees for three positions in the Immunization Division. Plaintiff was not notified of the positions and therefore did not apply for these positions.

---

[1]  As discussed *infra*, this court does not have jurisdiction over Plaintiff's USERRA claims. Therefore, the undersigned has included only facts relevant to Plaintiff's non-USERRA claims.

[2]  Because all of the depositions cited are attached to Defendant's motion in full, the undersigned has cited only to the name of the deponent and deposition page numbers. All citations to Plaintiff's deposition refer to her May 25, 2011 deposition.

In late 2006, Plaintiff was ordered to active duty for a year in support of Operation Noble Eagle and served her time at McDill Air Force Base in Florida. Pl. Dep. 154:12–155:11. Plaintiff returned from leave on or around April 17, 2008, and was reinstated. While Plaintiff was on leave, a DHEC Program Coordinator was terminated, leaving that position vacant. Defendant advertised the position as an "Internal Vacancy Announcement" and posted it between February 25, 2008 and March 7, 2008 and March 20, 2008 to March 26, 2008. [Entry #59-20, #59-21].  Internal Vacancy Announcements are only accessible from DHEC computers or posted at an on-site bulletin board. Butler Dep. 115:18–116:13; Gulledge Dep. 16:2–14. Therefore, Plaintiff did not see the posting, although her supervisor, Linda Kelly, had informed her that the prior coordinator had been terminated. [Entry #59-11]. Plaintiff admits that she knew the position would be open and she did not inquire about it. Pl. Dep. 160:4–24.  Plaintiff did not apply for the position and Wendell Gulledge (white male) was selected.

Also while Plaintiff was on leave, Kelly contacted her about a promotion opportunity. *Id.* at 173:9–16. Plaintiff then submitted an updated resume and applied for the promotion.  The day after Plaintiff returned from leave, Defendant submitted a salary increase justification to the South Carolina Office of Human Resources ("OHR") reflecting Defendant's desire to promote Plaintiff to an Administrative Coordinator I position and give her a 24% pay increase. *Id.* at 177:21–178:17. Such a large percentage increase required OHR approval.  Ultimately the position was also posted internally in the Immunization Division according to procedure. *Id.* at 181:6–19. Plaintiff was selected over her fellow employee, Bobbie Stevenson (white female). *Id.* Plaintiff received a 24%

pay increase as a result of the promotion and began performing the duties of Administrative Coordinator in late summer of 2008. *Id*. at 185:5–24.

As the Administrative Coordinator, Plaintiff was supervised by Gulledge. She performed many of the same duties that she performed as an Administrative Specialist, but gained the responsibility of initially supervising two other administrative employees, and later a third. Pl. Dep. 186:25–187:17, 217:13–21. On January 28, 2009, while she was still in the trial period for her position, Plaintiff received her performance evaluation from Gulledge and received an overall "commendable" rating, which she agreed was a positive evaluation. *Id.* at 192:14–22.

Immediately after Gulledge gave Plaintiff her evaluation and she signed it, he explained to her that, as part of his evaluation process, he sent out a peer review survey to regional employees to get feedback on Plaintiff's performance. *Id*. at 196:19–25. Plaintiff was upset that Gulledge used the peer review survey, because she felt this was atypical and she had been singled out, though she admits that Gulledge did not supervise anyone else. *Id*. at 199:10–18.  Additionally, Gulledge told Plaintiff that schoolwork had been observed on her desk, advised her that it could create the wrong impression, and encouraged her to lead by example. *Id*. at 209:1–13; 217:3–10.  Gulledge also told Plaintiff to notify him when she was taking a break. *Id*. at 204:5–9.  In response to the peer review surveys and Gulledge's new requests regarding her schoolwork and breaks, Plaintiff requested to re-sign her evaluation. *Id*. at 210:2–10. Defendant denied her request, but allowed her to submit comments to be attached to her evaluation. *Id*. at 210:11–13. In her comments, Plaintiff complained about Gulledge's use of the peer

review survey and also stated that Gulledge should be required to learn her daily job duties and perform these duties when she is out of the office. [Entry #56-35 at 3].

At some point thereafter, Plaintiff suggested to Gulledge that she did not know if she wanted to be a supervisor anymore and was considering potentially relinquishing her supervisory duties. [Entry #56-40 at 3]. On February 2, 2009, Human Resources Manager Pat Butler (black female), Immunization Director Susan Smith (white female), Kelly, and Gulledge met with Plaintiff to discuss her comment regarding relinquishing her supervisory duties. [Entry #56-39]. Defendant contends, and Plaintiff has not disputed, that Gulledge requested Plaintiff to clarify whether she intended to relinquish her supervisory authority, but Plaintiff did not provide an answer. *Id.* Also on February 2, Plaintiff sent an email to the employees she supervised indicating that they should not have any non-DHEC related material on their desks and referred them to Gulledge if they had any questions. [Entry #56-36]. Defendant viewed this email as inappropriately involving subordinates in her disagreement with Gulledge. [Entry #56-39].

On February 5, 2009, Gulledge sent a memorandum to Plaintiff reiterating that she should not perform school work at her desk during office hours in order to avoid a negative perception. [Entry #56-37]. The memorandum also requested that Plaintiff provide him with clarification by February 10 as to whether she intended to relinquish her supervisory position. *Id.* According to Plaintiff, she sought clarification from Gulledge about his requests, but brought another employee, Betty Jo Sanders,[3] to serve as a

---

[3] Defendant argues that Sanders was under Plaintiff's supervision (Butler Dep. 46:22-47:1), although Plaintiff argues that Sanders was not her subordinate at this time.

witness, because she believed Gulledge would lie or twist her words. Pl. Dep. 219:5–13. Defendant viewed this as insubordination and improper involvement of employees in the matter. [Entry #56-39].

In response to Gulledge's February 5, 2009 memorandum, Plaintiff informed Butler via a February 10, 2009 email that she intended to continue in her supervisory role. [Entry #56-38]. Plaintiff also requested a new supervisor and informed Butler of her intent to file an EEOC complaint against Gulledge. *Id.* Unbeknownst to Plaintiff, on February 9, 2009, Bureau Director James Gibson had approved Gulledge's request to reclassify Plaintiff's job title and salary to her pre-promotion position. [Entry #59-35]. On February 17,[4] Smith gave Plaintiff a memorandum informing her that Smith would assume supervision of Plaintiff and her subordinates effective February 18, 2009. [Entry #56-39]. The memorandum cites to instances of alleged insubordination by Plaintiff and expresses the view that Plaintiff's "lack of personal insight into the consequences of these behaviors is troubling and strongly suggests that [Plaintiff is] not ready for leadership responsibilities expected and needed in the Division." *Id.* at 3.

II.    Discussion

A.    Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating that

---

[4] Although the record is not clear, it appears Plaintiff was out of the office for some or all of February 11–16, 2009. *See* Entry #56-40 at 3 (Plaintiff states she "returned to the office on Feb 17.")

summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non–movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

B.    Analysis

1.    § 1981 claims for incidents prior to 2008

The statute of limitations period under § 1981,[5] applicable to post-contract formation conduct, is the four-year period prescribed by 28 U.S.C. § 1658. *See Edith Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004); *Hunter v. American Life and Accident Insurance Company*, 375 F.Supp.2d 442, 448 (D.S.C. 2005). Therefore, Plaintiff's § 1981 claims for race discrimination in 2004 and 2005 are time-barred and Defendant is entitled to summary judgment on these claims.[6]

---

[5] Defendant cites to §1981, as the remedial provisions of § 1983 are used to enforce § 1981 against state actors and Plaintiff has not brought distinct claims under § 1983. *See Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 n. 1 (4th Cir. 1995).

[6] Plaintiff argues that while the 2004–2005 claims may be time-barred, the court should consider them as evidence of continuing violations. However, Plaintiff testified that she did not believe she was discriminated against based on her race with regard to these claims, so there is no evidence of a continuing violation under § 1981. Pl. Dep. 117:1–6, 128:14–17, 139:2–19.

2.    § 1981 claim related to 2008 position

The *McDonnell-Douglas* framework applies to discrimination claims under Section 1981. *Lightner v. City of Wilmington*, 545 F.3d 260, 263 fn.* (4th Cir. 2008). Thus, to prove a failure to promote due to Plaintiff's race[7] under § 1981, Plaintiff must establish that: (1) she is a member of a protected group; (2) she applied for the position in question; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 544–45 (4th Cir. 2003) (citations omitted).

Plaintiff cannot establish a prima facie case because she did not apply for the 2008 position. Although Plaintiff claims Defendant discriminated against her by not informing her that the position was open, she alleges this discrimination was based on her military leave. Pl. Dep. 170:21–24. As discussed, *infra*, this court does not have jurisdiction over Plaintiff's USERRA claims. To the extent that Plaintiff argues she was not informed about the position based on her race, she cannot set forth a prima facie case. Although Plaintiff did not receive the Internal Vacancy Announcement because she was on military leave, the announcement was accessible to Defendant's other black employees. Thus, Plaintiff cannot show that she was treated differently based on her race. Because Plaintiff cannot show that she applied for the position or that Defendant failed to notify her of the position because of her race, Plaintiff cannot set forth a prima facie case for race

---

[7] The court has analyzed only Plaintiff's § 1981 race claims, as § 1981 is not applicable to sex claims.

discrimination under § 1981 related to the 2008 position. The undersigned therefore recommends Defendant be granted summary judgment on this claim.

### 3.     Title VII claims for incidents prior to June 2008

Plaintiff's Title VII claims for incidents prior to June 2008 are time-barred. Plaintiff filed her EEOC charge of discrimination on April 22, 2009.  Thus, the 300-day limitations period ran from June 26, 2008 to April 22, 2009. *See United Air Lines v. Evans*, 431 U.S. 553, 558 (1977); *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1048 (4th Cir. 1987); *see also Hamilton v. 1st Source Bank*, 928 F.2d 86, 90 (4th Cir. 1990) (holding that a claim was time-barred because plaintiff failed to file a timely charge with the EEOC). Therefore, because Plaintiff's failure to promote claims all took place before June 2008, they are time-barred and should be dismissed.  Additionally, Plaintiff did not raise these claims in her EEOC charge and the court is therefore without jurisdiction to hear these claims. Thus, Defendant is entitled to summary judgment on any Title VII claims not contained in her EEOC charge, which includes all incidents prior to 2009.

### 4.     Claims related to Plaintiff's 2009 demotion

Plaintiff alleges claims for race discrimination under Title VII and § 1981 and for sex discrimination under Title VII in relation to the events culminating in her February 2009 demotion. Because the prima facie case is the same for both, the undersigned considers these claims together.

### a.     Hostile Work Environment Claim

To establish a prima facie showing of a hostile work environment under Title VII or § 1981, a plaintiff must show that the offending conduct (1) was unwelcome, (2) was

because of her sex/race, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer. *Ziskie v. Mineta*, 547 F.3d 220, 224 (4th Cir. 2008).

Assuming the offending conduct was unwelcome and imputable to her employer, Plaintiff has failed to show that it was because of her sex or race or that it was sufficiently severe and pervasive. Plaintiff testified unequivocally that Gulledge never made any sex or race-based comments to her during her employment and she did not overhear any such remarks by Gulledge. Pl. Dep. 205:24–206:11. Therefore, she cannot proffer any evidence that his actions were sex or race-based and has not set forth the second element of a prima facie case.

Establishing the third element requires that Plaintiff show that the work environment was not only subjectively hostile, but also objectively so. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). Such proof depends upon the totality of the circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Here, Plaintiff's only evidence of alleged harassment consists of Defendant's requiring her to attend "repeated meetings facing multiple Defendant witnesses" while prohibiting her from bringing a "witness or representative." [Entry #59 at 32]. Plaintiff's allegation that she was forced to attend meetings with other employees without a witness or representative is insufficient to show that the alleged harassment was so severe and

pervasive to constitute grounds for a hostile work environment claim. Although Plaintiff generally cites to "excessive supervision" and "constant criticism" [Entry #59 at 31], these conclusory allegations are also insufficient to show that the offending conduct was sufficiently severe and pervasive. Therefore, Plaintiff has failed to meet the elements of a prima facie case, and the undersigned recommends Defendant be granted summary judgment on Plaintiff's hostile work environment claim.

b.    Disparate Treatment pursuant to Title VII and § 1981

To establish a prima facie case of race or sex discrimination under Title VII or § 1981, a plaintiff must prove: (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment. *Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010). The employer may then rebut the prima facie case by showing that there was a legitimate non-discriminatory reason for the adverse action, after which the burden shifts back to the plaintiff to show that those reasons are pretextual. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005).

It is undisputed that Plaintiff is a member of a protected class for race or sex discrimination and that she suffered an adverse employment action. Defendant argues that she was not satisfactorily performing her job. In determining whether Plaintiff was satisfactorily performing her job, the court looks at how Plaintiff was performing prior to the incident at issue in the lawsuit. *See, e.g., Belton v. Chester Lancaster Disabilties and Special Needs Board, Inc.*, No. 0:05-1649-MBS, 2007 WL 528064, *8 (D.S.C. 2007). The issues leading to Plaintiff's demotion began immediately after she received her first

evaluation as a supervisor on January 28, 2009. Plaintiff received an overall "commendable" rating, which was by all accounts a favorable evaluation. Pl. Dep. 192:14–16. Therefore, Plaintiff has shown that she was satisfactorily performing her job for purposes of a prima facie case.

Defendant also argues that Plaintiff has failed to show a similarly-situated employee who was treated more favorably. Plaintiff argues that the Forde Claffy, Betty Jo Sanders, Bobbie Stevenson, and Wendell Gulledge are proper comparators. When a plaintiff bases her discrimination claim on a similarly-situated comparator, it is the plaintiff's "task to demonstrate that the comparator is indeed similarly situated." *Haywood v. Locke*, No. 09-1604, 2010 WL 2711294, *2 (4th Cir. July 6, 2010) (citing *Tex. Dep't. of Comty. Affairs v. Burdine*, 450 U.S. 248 (1981)). "Plaintiff [is] required to show that they are similar in all relevant respects to their comparator. Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id*.

Forde Claffy

Plaintiff argues that Claffy (white male) was demoted following SLED reports that he was accessing pornography on Defendant's computers, but that he maintained his full salary for some time. [Entry #59 at 20]. Additionally, she alleges that "Defendant's initial proposal [for Claffy] was for a treatment program." *Id*. However, Plaintiff's citation to the record does not support her allegations. She first cites to an email from

12

Butler to Gulledge, wherein Butler explains that Plaintiff is different from Claffy and Sanders because Claffy and Sanders were in permanent positions, and Plaintiff was in a trial position. [Entry #59-39]. Additionally, Kelly clarified that Claffy was demoted prior to the SLED investigation, although she did not have knowledge of the issues surrounding his demotion. Kelly Dep. 106:20–107:7. Kelly actually testified that she only remembered "one person considering a treatment program" after the SLED investigation. *Id*. at 39:2–3. In any event, Claffy was terminated and was not given the opportunity to attend a treatment program. Therefore, Plaintiff has presented no evidence that she was similarly-situated to Claffy in terms of his demotion. Additionally, Claffy was treated less favorably than Plaintiff after his misconduct.

Betty Jo Sanders

Plaintiff also names Sanders (white female) as a comparator, and alleges that Sanders retained her salary despite a demotion. However, the evidence also shows that Sanders was in a permanent position, as opposed to Plaintiff who was still in a trial position. [Entry #59-39]. Butler testified that state regulation requires Defendant to maintain the salary of an employee in a permanent position for two years. Butler Dep. 94:3–12. Butler explained that Defendant replaced Sanders duties instead of waiting two years to reduce her salary. *Id*. Therefore, Plaintiff has failed to show that Sanders is a valid comparator because she was in a permanent position and Plaintiff was not.

Bobbie Stevenson

While noting that Stevenson was not a supervisor, Plaintiff nevertheless lists Stevenson as a valid comparator because Stevenson once threw a book at Kelly, her

supervisor.  In addition to not being a supervisor, Stevenson was not supervised by Gulledge.  Plaintiff has not shown that she and Stevenson were similarly situated.

Wendell Gulledge

Plaintiff also contends that Gulledge was similarly situated, in that he also lost his supervisory role, but that he retained his salary.  However, Gulledge lost his supervisory role based on Plaintiff's insubordination when he supervised her, and not through any conduct of his own. His loss of supervisory capacity was a direct result of Plaintiff's insubordination and demotion, as he did not supervise any other employees. Therefore, because he was not disciplined for insubordination or demoted, Gulledge is not a valid comparator to Plaintiff.

Plaintiff has failed to set forth a prima facie case because she has not shown that similarly-situated employees outside of the protected class were treated more favorably. Even if Plaintiff could show a prima facie case, Defendant has set forth a legitimate, non-discriminatory reason for her demotion: she behaved in an insubordinate and confrontational manner to her supervisor.  Therefore, the burden shifts to Plaintiff to show that Defendant's reason for her termination was pretextual.

Plaintiff has not offered any evidence that Defendant actually demoted her based on her sex or race. Although Plaintiff alleges that Defendant treated her unfairly and that her demotion was too severe a punishment, the record is devoid of any allegations that her sex or race accounted for any portion of the decision. "Title VII is not a vehicle for substituting the judgment of a court for that of the employer." *Jiminez v. Mary Washington College*, 57 F.3d 369, 377 (4th Cir. 1995).  Courts do not sit as "super

personnel departments second guessing an employer's perceptions of an employee's qualifications." *Malghan v. Evans*, 118 Fed.Appx. 731 (4th Cir. 2004) (citing *Smith v. University of N. Carolina*, 632 F.2d 316, 346 (4th Cir.1980)).  In fact, "the law does not require an employer to make, in the first instance, employment choices that are wise, rational, or even well-considered, as long as they are nondiscriminatory.  *Id.,* (citing *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1156–57 (2d Cir. 1978)).  The court's only concern is:

> whether the reason for which the defendant discharged the plaintiff was discriminatory. Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.

*DeJarnette v. Corning Inc.*, 133 F.3d 293 (4th Cir. 1998) (citations omitted). Here, Plaintiff has provided no evidence that Defendant terminated her based on her sex or race instead of Defendant's proffered reason. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) (noting it is not enough to disbelieve the defendant—a factfinder must believe plaintiff's explanation of intentional race discrimination). Therefore, the undersigned recommends Defendant be granted summary judgment on Plaintiff disparate treatment claims under Title VII and § 1981.

### c.    Retaliation Claim

Title VII forbids employers from retaliating against their employees for exercising their rights under the statutes, which are considered "protected activities." 42 U.S.C. § 2000e–3(a); 29 U.S.C. § 623(d).  "Protected activities fall into two distinct categories: participation or opposition . . . . An employer may not retaliate against an employee [for]

participating in an ongoing investigation or proceeding . . . nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metropolitan Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

To set forth a prima facie case of retaliation, Plaintiff must show that (1) she engaged in protected activity; (2) an adverse employment action was taken against her; and (3) there was a causal link between the protected activity and the adverse action. *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006). Plaintiff claims that she engaged in protected activity when she twice stated in conversations with Gulledge that she needed to have an attorney present. Gulledge Dep. 97:23–98:7. Additionally, Plaintiff alleges that she engaged in a protected activity when she told Butler she planned to file an EEOC complaint against Gulledge.

The Fourth Circuit has "held that opposition activity is protected when it responds to an employment practice that the employee reasonably believes is unlawful." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006). The Fourth Circuit balances the purpose of anti-retaliation statutes against "Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." *Laughlin*, 149 F.3d at 259 (internal quotation marks omitted). Accordingly, anti-retaliation laws do not "protect employees who, with no more than good faith, complain about conduct that no reasonable person would believe amounts to an unlawful employment practice." *Jordan*, 458 F.3d at 342. Instead, the employee's belief that the conduct of which she complains actually violates the statute in question must be an objectively reasonable one,

and whether the employee's belief is reasonable is a question of law for the court. *Id*. at 339.

Here, Plaintiff's statement that she needed an attorney present during meetings with Gulledge and other employees represents an opposition to Gulledge's alleged twisting of her words during these meetings. However, Plaintiff never indicated that she believed she was being discriminated against based on sex or race, or any other basis actionable under Title VII. Therefore, Plaintiff did not have an objectively reasonable belief that she was opposing conduct that violated the statute when she stated she needed an attorney present.

Defendant has not disputed that Plaintiff's February 10, 2009 statement that she planned to file an EEOC complaint for discrimination by Gulledge is a protected activity. However, Defendant argues Plaintiff has failed to show a causal link between the protected activity and her demotion. Unbeknownst to Plaintiff, on February 9, 2009, Bureau Director Gibson had approved Gulledge's request to reclassify Plaintiff's job title and salary to her pre-promotion position. [Entry #59-35]. Therefore, Defendant had decided to demote Plaintiff prior by February 9, prior to her February 10 protected activity. Plaintiff argues that Butler's response to Plaintiff's February 10, 2009 email indicates that no decision had been made regarding reclassifying Plaintiff's job title and salary by stating that "[t]he final decision is up to [Plaintiff's] supervisors." [Entry #59 at 30]. However, a review of the email reveals that Butler was referring to the potential consequences of Plaintiff's voluntary relinquishment of her supervisory position. [Entry #59-31]. Therefore, Plaintiff has not shown any causal connection between her protected

activity and Defendant's decision to demote her, as her demotion had been approved prior to her protected activity.

Even if Plaintiff were able to show a prima facie case of retaliation, she has failed to show that Defendant's proffered reason for her demotion was pretextual. Defendant produced a legitimate, non-discriminatory reason for demoting Plaintiff: she behaved in an insubordinate and confrontational manner to her supervisor. Plaintiff has provided no evidence that Defendant's proffered reason was pretextual. Therefore, the undersigned recommends Defendant be granted summary judgment on Plaintiff's retaliation claim.

> 5.    Plaintiff's state law claim

Although Plaintiff alleges a cause of action for violation of South Carolina Human Affairs Law, S.C. Code Ann. § 1-13-10, *et seq*., the statute does not provide for a distinct cause of action. In fact, S.C. Code Ann § 1-13-100 "specifies that the Human Affairs Law creates no cause of action which would not attach to employer under Title VII . . . ." *Orr v. Clyburn*, 290 S.E.2d 804, 806 (S.C. 1982). Therefore, Defendant is also entitled to summary judgment on this claim.

> C.    Plaintiff's USERRA claims

Plaintiff's amended complaint contains claims for discrimination and retaliation under USERRA. Defendant has moved to dismiss these claims for lack of subject matter jurisdiction. Specifically, Defendant argues that Congress passed the Veterans Programs Enhancement Act of 1998, which made substantial revisions to the jurisdiction and venue provisions of USERRA. Pub. L. No. 105-368, § 211(a), 112 Stat. 3315, 3329 (1998). The stated purpose of the legislation, in part, was "to clarify enforcement of veterans'

employment and reemployment rights with respect to a State, as an employer." 144 Cong. Rec. at H1396; *see also* H.R. 3213. The summary of the bill in the Report of the House Committee on Veterans' Affairs states, in part, as follows:

> This bill would substitute the United States for an individual veteran as the plaintiff in enforcement actions in cases where the Attorney General believes that a State has not complied with USERRA…Individuals not represented by the Attorney General would be able to bring enforcement actions in state court.

H.R. Rep. No. 105-448, at 2 (1998).

Consistent with the stated purpose of the amendments, the Veterans Programs Enhancement Act of 1998 amended the jurisdictional provision to provide that "[i]n the case of an action against a State (as an employer) by a person, the action may be brought in a State court of competent jurisdiction in accordance with the laws of the State." 38 U.S.C. § 4323(b)(2). Although the language of the statute is permissive, the Supreme Court has made it clear that Congress may only abrogate the states' sovereign immunity when it expresses an unequivocal intent to do so and acts pursuant to a valid exercise of power. *Seminole Tribe v. Florida*, 517 U.S. 44, 55 (1996). Here, Congress did not express such an unequivocal intent to abrogate states' sovereign immunity.

Although there is a strong presumption against waiver of Eleventh Amendment immunity, a state can agree to subject itself to liability in federal court by "express language or . . . overwhelming [textual] implications." *Fla. Dep't of Health v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 150 (1981). Removal to federal court can sometimes constitute a waiver of Eleventh Amendment immunity. *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002). However, in the case at hand, Plaintiff had not asserted her USERRA

claims until filing her Amended Complaint after Defendant had removed the case. Therefore, there is no evidence that Defendant intended to waive its Eleventh Amendment immunity in the instant case. Therefore, this court does not have jurisdiction over Plaintiff's USERRA claims.

Plaintiff moves for the USERRA claims to be remanded, while Defendant seeks to have them dismissed. [Entry #62, #64]. Defendant argues that because the claims were not originally brought in Plaintiff's state court complaint, they cannot be remanded to state court. In support, Defendant cites to cases holding that cases that were not originally brought in state court cannot be remanded to state court. This case is distinct from the cases cited, because Plaintiff originally brought this case in state court. Although Plaintiff added the USERRA claims after Defendant removed the case, Defendant has cited no authority holding that the court cannot remand a case containing claims added after removal, and the undersigned has been unable to find such authority. If the district judge accepts the recommendations on Plaintiff's non-USERRA claims, only the USERRA claims remain, over which this court lacks jurisdiction. Therefore, the undersigned recommends that Plaintiff's USERRA claims be remanded to state court. *See* 28 U.S.C. 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

III.    Conclusion

For the foregoing reasons, it is recommended that Defendant's motion for summary judgment [Entry #56] be granted with regard to all non-USERRA claims and denied without prejudice with regard to Plaintiff's USERRA claims. Additionally, it is

recommended that Defendant's motion to dismiss [Entry #62] be denied and Plaintiff's motion to remand [Entry #64] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

January 25, 2013                                     Shiva V. Hodges
Columbia, South Carolina                             United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).