IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

|  |  |  |
|---|---|---|
| Sebrena Hammett, | ) | |
| | ) | C/A No. 3:10-0932-MBS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| South Carolina Department of Health | ) | |
| and Environmental Control, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Sebrena Hammett is an employee of Defendant South Carolina Department of

Health and Environmental Control.  During the time of the underlying claims, Plaintiff also was a

member of the United States Army Reserves.  On March 15, 2010, Plaintiff, who is a black female,

filed a complaint in the Court of Common Pleas for Richland County, South Carolina against

Defendant, alleging, among other things, that she had been subjected to discrimination on the basis

of her race and gender,  in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e

et seq. ("Title VII").  On April 4, 2010, Defendant removed the action to this court, asserting federal

question jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1446.  In accordance with 28 U.S.C. §

636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge

Joseph R. McCrorey, and reassigned to Magistrate Judge Shiva V. Hodges, for pretrial handling.

On December 22, 2010, Plaintiff filed an amended complaint alleging the following:

discrimination based upon her military service, in violation of the Uniformed Services Employment

and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301-4335 ("USERRA") (First Cause of

Action); retaliation in violation of USERRA (Second Cause of Action); deprivation of her rights

under the Fourteenth Amendment, in violation of 42 U.S.C. §§ 1981 and 1983 (Third Cause of

Action); discrimination on the basis of race and gender, in violation of Title VII (Fourth Cause of Action); retaliation, in violation of Title VII (Fifth Cause of Action); and violation of South Carolina Human Affairs Law, S.C. Code Ann. § 1-13-10 et seq. (Sixth Cause of Action).

On June 7, 2012, Defendant filed a motion for summary judgment. Plaintiff filed a response in opposition on July 12, 2012, to which Defendant filed a reply on July 27, 2012. Also on July 27, 2012, Defendant filed a motion to dismiss Plaintiff's USERRA claims for lack of jurisdiction . Plaintiff filed a motion to remand and response in opposition to Defendant's motion to dismiss on August 13, 2012. Defendant filed a response in opposition to the motion to remand on August 29, 2012.

On January 25, 2013, the Magistrate Judge issued a Report and Recommendation in which she recommended that Defendant's motion for summary judgment be granted with respect to all non-USERRA claims and denied without prejudice as to Plaintiff's USERRA claims. The Magistrate Judge further recommended that Defendant's motion to dismiss the USERRA claims be denied and that Plaintiff's motion to remand the USERRA claims be granted. Plaintiff filed objections to the Report and Recommendation on March 11, 2013. Defendant filed a reply to Plaintiff's objections on March 28, 2013 and requested that the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court may accept, reject, or modify, in whole or in part, the Report and Recommendation or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

As an initial matter, the court notes that no party objects to the Magistrate Judge's

determination that Plaintiff's USERRA claims be remanded to state court.[1]  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

> Congress promulgated USERRA
>
> (1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;
>
> (2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and
>
> (3) to prohibit discrimination against persons because of their service in the uniformed services.

38 U.S.C. § 4301.

USERRA claims brought against a state as an employer "may be brought in a State court of competent jurisdiction in accordance with the laws of the State."  39 U.S.C. § 4323(b)(2).  The Magistrate Judge found that, although the language of § 4323(b)(2) is permissive, there is a strong presumption against the waiver of Eleventh Amendment immunity and no evidence that Defendant, as a state agency, intended to waive its Eleventh Amendment immunity with respect to this cause of action.

"Congress's intention to limit USERRA suits against states to state courts is unmistakable;[.]"  Velasquez v. Frapwell, 165 F.3d 593, 594 (7th Cir. 1998).  Congress's use of the

---

[1] Plaintiff objects to the Magistrate Judge's analysis regarding Eleventh Amendment immunity, but not to the Magistrate Judge's recommendation that the USERRA causes of action be remanded.

permissive "may" with respect to bringing suit in some other forum "does not evince an intent to grant federal jurisdiction over actions brought by individuals against states, and it certainly does not evince an intent to abrogate the states' sovereign immunity." Townsend v. Univ. of Alaska, 543 F.3d 478, 484 (9th Cir. 2008) (citing cases). See also Keating v. Univ. of S. Dakota, 385 F. Supp. 2d 1096, 1105 (D.S.D. 2005) (holding that jurisdiction over USERRA claims by individuals against state employers does not lie in federal court). The court agrees with the Magistrate Judge that the court lacks subject matter jurisdiction over Plaintiff's USERRA causes of action. Plaintiff's motion to remand is **granted** as to her First and Second Causes of Action.

The Magistrate Judge also determined that any 42 U.S.C. § 1981 claims for incidents in 2004 and 2005 are time-barred and any Title VII claims for incidents prior to June 2008 also are time-barred. In addition, the Magistrate Judge observed that Plaintiff has not brought distinct claims under 42 U.S.C. § 1983. Plaintiff does not object to the Magistrate Judge's findings. The court discerns no clear error on the face of the record. Accordingly, the Magistrate Judge's recommendation is adopted as to these issues.

The court turns to the facts pertinent to Plaintiff's remaining claims.

## I. FACTS

The facts are thoroughly recited in the Report and Recommendation. Briefly, Plaintiff joined the U.S. Army Reserves in 1992. She was hired as a temporary employee in Defendant's Immunization Division in 1998, and hired permanently as an Administrative Specialist II in March 1999. Plaintiff has taken military leave throughout her employment with Defendant, including deployment to Iraq in 2004 in support of Operation Enduring Freedom and to MacDill Air Force Base in Tampa, Florida in 2007 in support of Operation Noble Eagle. Plaintiff also has taken online

courses during her employment in order to obtain a master's degree in counseling.

In early 2008, while Plaintiff was stationed at MacDill Air Force Base, a position came open for a program coordinator in the Immunization Division. Two announcements for the program coordinator position were posted on Defendant's intranet site in February and March 2008. Deposition of Linda Kelly 35-36, ECF No. 56-3. Plaintiff did not have access to the intranet and did not apply for the position. Eventually Wendell Gulledge, a white male, was hired into the position.

Plaintiff returned to her position with Defendant around April 2008. In May 2008, the position of Administrative Specialist I was posted internally within the Immunization Division. Plaintiff ultimately was hired into the position over a white female. Plaintiff's promotion resulted in a twenty-four percent raise and supervisory responsibilities. Plaintiff's immediate supervisor was Wendell Gulledge. Gulledge supervised no employees other than Plaintiff.

Gulledge prepared an evaluation of Plaintiff and met with her on January 28, 2009. See ECF No. 56-34. Plaintiff at the time of the evaluation still was in a probationary period and was not considered to be permanently in the Administrative Specialist I position. Gulledge gave Plaintiff positive comments in all categories and observed that Plaintiff was a team player, experienced, and knowledgeable. Gulledge gave an overall performance rating of commendable. Deposition of Sebrena Hammett 192-95, ECF No. 56-5. Gulledge and Plaintiff reviewed her evaluation together. Plaintiff then signed her evaluation and returned it to Gulledge, at which time Gulledge mentioned that he had sent out a peer review survey to everyone in the district as well as everyone in the Immunization Division. According to Plaintiff, peer review surveys had not been requested in the past with respect to any other employee in the Immunization Division. Id. 197. Plaintiff felt singled out and treated unfairly. Id. 200-03.

5

Gulledge also discussed with Plaintiff in their meeting a report he had received that Plaintiff had college work at her desk.  Deposition of Wendell Gulledge 40, ECF No. 56-4.  According to Gulledge, Plaintiff stated that she had permission to work on her studies at her desk.  Gulledge counseled Plaintiff about being a supervisor and subordinates viewing improper behavior.  Id. Gulledge also told Plaintiff that she needed to tell him any time she was going to be working at her desk. Id. 41. Gulledge then sought verification from Patricia Butler, Human Relations Manager, that Plaintiff was allowed to study at her desk.  On January 29, 2009, Butler responded in the negative, and Gulledge informed Plaintiff that she would not be allowed to study at her desk.  Id.  According to Gulledge, Plaintiff stated "I'm thinking of relinquishing my supervisory duties." Id. 45.

 Plaintiff denies having anything related to her studies on her desk and states she was not taking classes in January 2009.  Deposition of Sebrena Hammett 204.  According to Plaintiff, Gulledge told her to choose between school and her supervisory duties.  Plaintiff stated that if she had to choose, she would choose school.  Id. 209.  Plaintiff then requested a meeting with Butler. At the meeting, Butler explained "why its important to not have school-related materials on her desk. At one point she indicated to [Butler] that she was not performing her schoolwork on duty.  And [Butler] advised [Plaintiff] to simply remove it: remove the perception.  The perception was very important."  Deposition of Patricia Butler 43, ECF No. 56-2.  Butler told Plaintiff she could study on breaks or during lunch, as long as the eliminated any perception that she was studying while she was on DHEC time.  Id. 44.  According to Butler, she spent "hours trying to explain to [Plaintiff] why that was important."  Id.

On February 2, 2009, Plaintiff requested to re-sign her evaluation to make additional comments, which was denied.  However, Plaintiff was given the opportunity to attach comments to

her evaluation.  Id. 210; see ECF No. 56-35.  Plaintiff then provided Gulledge with a memorandum

objecting to the use of the peer review surveys and suggesting that Gulledge try performing

Plaintiff's job to understand what her job entailed.  ECF No. 56-35.  Also on February 2, 2009,

Plaintiff disseminated an email to the persons she supervised advising that:

> there is to be no Non-Dhec literature on or around your desk.  If you are on break,
> must read these materials away from your desk and it must [be] written on the board
> if you are on break.  If you have any questions or concerns, please see Wendell.

ECF No. 56-36.

Also on February 2, 2009, Gulledge requested clarification from Plaintiff as to her statement

regarding relinquishment of her duties.  According to Gulledge, Plaintiff refused to do so.  Gulledge;

Susan Smith, Director of the Immunization Division; and Linda Kelly, Program Coordinator 2 and

Gulledge's direct supervisor, met with Plaintiff to discuss the issue.  Gulledge Deposition 49, ECF

No. 56-4.

On February 5, 2009, Gulledge informed Plaintiff in writing of his instructions regarding

school work during office hours.  See ECF No. 56-37.  Plaintiff went to Gulledge's office and

brought a subordinate to witness the discussion.  Plaintiff contends that Gulledge lied about her

school work and twisted her words about choosing between being a supervisor and going to school.

Deposition of Sebrena Hammett 220, ECF No. 56-5.  Gulledge informed Butler of Plaintiff's actions.

Butler was quite disappointed that Plaintiff used such poor judgment in taking a subordinate

employee with her to the office of her supervisor to talk about a personnel issue.  Deposition of

Patricia Butler 47, ECF No. 56-2.

On February 10, 2009, Plaintiff informed Butler that she intended to continue her supervisory

position.  Plaintiff requested an alternate supervisor because Gulledge had "presented a hostile work

environment." ECF No. 56-38. Plaintiff also informed Butler that her response was her

> official notice of an EEO (Equal Employment Opportunity) Complaint against Mr.
> Wendell Gulledge. I feel I have been treated dishonorably and unfairly. I can no
> longer divulge any personal information to him because the entire office will know.
> I am also in limbo of why everytime I go on active duty and return, I get a new
> supervisor which I think is probably creating a problem. If I need to complete the
> necessary paperwork for EEO, please advise.

ECF No. 56-38.

Kelly testified that she was "surprised, amazed that something so trivial had just become such a big ordeal when it would have been – should have been simply handled." Deposition of Linda Kelly 79, ECF No. 56-3. Butler testified that she was "most disappointed" and thought Plaintiff's conduct was "most inappropriate." Deposition of Patricia Butler 61, ECF No. 56-2. Smith recalled that she, Butler, Kelly, and Gulledge felt that Plaintiff's reactions "did not meet the lines of professionalism as supervisor." Deposition of Susan A. Smith 65, ECF No. 56-7. On February 17, 2009, Smith, Kelly, and Gulledge met with Plaintiff and informed her that she would be demoted back to Administrative Specialist II and that her salary would be reduced to her former level. Smith prepared a memorandum to Plaintiff stating that the reclassification was the result of a series of work-related incidents that brought into question Plaintiff's suitability to serve in a leadership role. Specifically, Smith noted that:

- On January 28, 2009, Gulledge had requested that Plaintiff remove the perception that Plaintiff was working on college work while on duty; however, Plaintiff refused to accept his instructions.

- On January 29, 2009, Plaintiff had indicated that her school work was more important to her and she was giving consideration to relinquishing her supervisory duties. Smith observed that Plaintiff's response was very disappointing to her supervisor and managers.

- On February 2, 2009, Plaintiff refused to clarify her comments on January 29,

2009. Smith noted that this type of inappropriate, insubordinate behavior did not set a proper example for others to follow and was not acceptable in Plaintiff's role as supervisor.

• On February 2, 2009, Plaintiff sent an email to the employees she supervised, instructing them not to have items unrelated to DHEC work on their desks, and referring their questions to Gulledge. Smith noted that this reaction was unnecessary and inappropriately involved Plaintiff's subordinates in the matter, which raised concerns concerning Plaintiff's ability to appropriately exercise supervisory responsibilities.

• On February 5, 2009, Gulledge provided Plaintiff with a memorandum with instructions regarding school work during office hours, after which Plaintiff entered Gulledge's office along with a subordinate to discuss the matter. Smith noted that this resulted in an awkward situation for Plaintiff's supervisors and indicated very poor judgment.

• Smith found Plaintiff's tone and comments toward Gulledge to border on insubordination, to be less than professional, and to reflect poorly on Plaintiff as a supervisor.

See ECF No. 56-39.

Plaintiff filed a Charge of Discrimination with the South Carolina Human Affairs Commission on April 22, 2009. Plaintiff alleged discrimination based on race and gender, as well as retaliation. Plaintiff contended the discrimination took place between February 5, 2009 and February 17, 2009. Plaintiff alleged as follows:

I.  **PERSONAL HARM**. (A) I have been subjected to intimidation through February 5, 2009 and continuing. (B) I have been subjected to disparate terms and conditions from February 5, 2009 and continuing. (C) I was demoted to Administrative Specialist II on February 17, 2009.

II. **RESPONDENT'S REASON(S) FOR ADVERSE ACTION(S)**: (A) No reason given. (B) Respondent stated I should not have non-work related materials or take breaks at my desk because I was a supervisor. (C) Respondent stated I was being demoted because of several incidents that brought into question my suitability to serve in a supervisory role.

III. **COMPLAINANT'S CONTENTION(S)**: (A) I have been subjected to

9

excessive supervision, constant criticism, and a hostile work environment created by my supervisor (white male).  From the time he was assigned our division, it seemed as if he was dissatisfied with my promotion into a supervisory ole, he made no attempt to support me in that position, and he threatened to take it away from me.  White employees are treated more favorably and I contend that I have been targeted because of my race.  I complained to management but no corrective action has been taken.  (B) I contend the reason given is a pretext, because my supervisor (white male) often reads non-work related materials and takes breaks at his desk.  Additionally, since I have been demoted from my supervisory position, I continue to be denied the ability to take breaks or have non-work related materials at my desk, but other similarly-situated employees (white) are allowed to eat, read non-work related materials, and even have personal visitors at their desks.  (C) I contend the reason given is a pretext because I believe that I demonstrated by suitability to serve in a supervisory role when it was awarded to me by my previous supervisor.  I contend that I was demoted because I informed by employer that I intended to file a complaint of discrimination due to the hostile work environment created by my current supervisor.

IV.    **DISCRIMINATION STATEMENT**.  I therefore believe I have been discriminated against based on my race (black), sex (female), and in retaliation for my opposition to employment practices declared unlawful by the SC Human Affairs Law, as amended, and Title VII of the US Civil Rights Act of 1964 as amended.

ECF No. 56-42.

## II.  DISCUSSION

Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56.  Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."  Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289  (1968)).

In ruling on a motion for summary judgment, a court must view the evidence in the light most

favorable to the non-moving party.  Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th

Cir. 1990).  All that is required is that "sufficient evidence supporting the claimed factual dispute

be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "Mere unsupported speculation . . . is

not enough to defeat a summary judgment motion."  Ennis v. Nat'l Ass'n of Bus. & Educ. Radio,

Inc., 53 F.3d 55, 62 (4th Cir. 1995).  A party cannot create a genuine issue of material fact solely with

conclusions in his or her own affidavit or deposition that are not based on personal knowledge.  See

Latif v. The Community College of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec.

9, 2009).

A.    § 1981 Claim Related to Program Coordinator Position

Plaintiff contends that Defendant failed to promote her to the program coordinator position

in 2008 because of her race.[2]  Title 42, United States Code, Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in
> every State and Territory to make and enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit of all laws and proceedings for the security
> of persons and property as is enjoyed by white citizens, and shall be subject to like
> punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no
> other.

Making and enforcing contracts includes "the making, performance, modification, and termination

of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual

relationship." 42 U.S.C. § 1981(b). To pursue a claim under § 1981, Plaintiff must prove that the

Defendant intended to discriminate against her on the basis of her race, and that the discrimination

interfered with a contractual interest.  See Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 434

---

[2] Although Plaintiff alleges discrimination under § 1981 on account of race and gender, § 1981
applies only to discrimination on account of race.

11

(4th Cir.2006).

To state a claim under § 1981, Plaintiff first must establish prima facie case of race discrimination, showing that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she suffered this adverse action despite performing her job in accordance with the employer's legitimate expectations; and (4) the circumstances gave rise to an inference of unlawful discrimination.  See Howard v. Lakeshore Equip. Co., 482 F. App'x 809, 810 (4th Cir. 2012).

The Magistrate Judge determined that Plaintiff did not make out a prima facie case of race discrimination under § 1981 because she did not apply for the position.  The Magistrate Judge further noted that the announcement was accessible to Defendant's other black employees who did have access to the intranet.  The Magistrate Judge therefore concluded that Plaintiff cannot show she was treated differently because of her race.

Plaintiff argues that a non-applicant can prevail where he did not know about the position because of the actions of the employer.  Plaintiff contends that she was unable to apply for the position because she had no access to Defendant's intranet from MacDill Air Force Base.  According to Plaintiff, the fact that the program coordinator position was posted twice provides evidence that race influenced Defendant's decision to hire Gulledge.

During her deposition, Plaintiff testified as follows:

Q.    Were you a better qualified candidate for the program coordinator I position in 2008 than Mr. Gulledge?

A.    I don't know if I was a better qualified candidate or not.  I know I qualified for this position.

Q.    Do you believe the decision to hire Wendell Gulledge constituted

12

discrimination based on your race or your gender?

A.    They seemed to have created a trend when hiring white males for this position, but at the time I thought what can I do.

Q.    The trend was two people, Forde Claffy and Wendell Gulledge is that right?

A.    Right.

Q.    That's the only two people that ever held the position?

A.    Right.

Q.    Do you know whether females or African-American qualified candidates applied for the position?

A.    I don't know.

Q.    What do you base your opinion on?

A.    From seeing them hire.

Q.    From seeing the two individuals hired?

A.    Yes.

Q.    That's your only evidence that the hiring of Wendell was discriminatory based on gender or race?

A.    Yes.

Q.    Has anyone while you have worked at DHEC ever made any negative comments about your gender?

A.    No.

Q.    Has anyone made any negative comments about your race?

A.    No.

Q.    Other than the trend you saw in hiring two white males for the program coordinator I position, do you have any other evidence of race discrimination?

. . . .

A.    Not that I recall.

Deposition of Sabrena Hammett 167-68, ECF No. 56-5.

In the court's view, Plaintiff's conclusory allegations do not demonstrate circumstances giving rise to an inference of race discrimination. The court concurs with the Magistrate Judge's determination that Plaintiff failed to establish a prima facie case under § 1981. Defendant's motion for summary judgment is granted as to Plaintiff's Third Cause of Action alleging violations of § 1981.

B.    Section 1981 and Title VII Claims related to Plaintiff's 2009 Demotion

1.    Hostile Work Environment. Plaintiff first contends she was subjected to a hostile work environment in violation of her rights under § 1981 and Title VII.[3]

The court previously set forth the provisions of § 1981 with respect to race discrimination and the making and enforcement of contracts. Title VII makes it an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1).

To survive summary judgment on her claims of a hostile work environment, Plaintiff must demonstrate that she was subjected to conduct that (1) was unwelcome; (2) was based on race or gender; and (3) was sufficiently severe or pervasive to alter the conditions of employment and create

---

[3] The court notes that Plaintiff's complaint alleges a hostile work environment solely with respect to USERRA. See Amended Complaint 13, ECF No. 23. Nevertheless the court will address the Magistrate Judge's analysis under Title VII and § 1981.

an abusive atmosphere, and (4) there is some basis for imposing liability.  Spriggs v. Diamond Auto Glass, 242 F.3d 179, 184 (4th Cir. 2001) (citing Causey v. Balog, 162 F.3d 795, 801 (4th Cir.1998)). The elements are the same under either § 1981 or Title VII.  Id. (citing Causey at 804).

The degree of hostility or abuse to which Plaintiff allegedly was exposed is determined by examining the totality of the circumstances.  See id. (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).  Relevant considerations may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  Id. (citing Harris, 510 U.S. at 23).   To be actionable, the conduct must create an objectively hostile or abusive work environment, and the victim must also perceive the environment to be abusive.  Id. (citing Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 183 (4th Cir.1998)).

The Magistrate Judge found that Plaintiff's only evidence of alleged harassment consisted of Defendant's requiring her to attend "repeated meetings facing multiple Defendant witnesses" while prohibiting her from bringing a "witness or representative."  See Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment 32, ECF No 59.  In her objections, Plaintiff further contends that she was subjected to a hostile work environment because she was required to report to Gulledge when taking a break; forbidden to eat lunch at her desk; continuously called into Gulledge's office, which affected her ability to do her job; and repeatedly asked if she wished to relinquish her supervisory duties.  According to Plaintiff, Gulledge treated her differently from anyone else in the office.[4]  Deposition of Sebrena Hammett 223, ECF No. 56-5.  However,

---

[4] Plaintiff also acknowledges that Gulledge did not supervise anyone else in the Immunization Division.  Id. at 224.

Plaintiff also testified in her deposition:

> Q.    Did Wendell ever make any gender comments to you or any negative comments about your gender?
>
> A.    No, he didn't.
>
> Q.    Did Wendell ever make any comments to you about your race or use any racial slurs or anything like that?
>
> A.    No.
>
>       . . . .
>
> Q.    Did you ever overhear Wendell making any comments to anyone about your gender [or] your race . . . ?
>
> A.    No.

Deposition of Sebrena Hammett 205-06, ECF No. 56-5.

Although Plaintiff may have found the work environment to be subjectively hostile, the court concludes that no reasonable jury would find that Gulledge's conduct created an objectively hostile or abusive work environment.  There is no evidence of harassment based on gender or race. Gulledge was not physically threatening and used no disparaging language related to Plaintiff's gender or race.  Simply stated, there is no evidence that Plaintiff's workplace was permeated with discriminatory intimidation, ridicule and insult.  See Harris, 510 U.S. at 21.  At most, Gulledge may have made poor management decisions subsequent to Plaintiff's negative reaction to being instructed not to study at her desk.  It is not for the court to direct Defendant's business practices or to second guess the wisdom of business decisions.  See EEOC v. Clay Printing Co., 955 F.2d 936, 946 4th Cir. 1992). The court concurs in the Magistrate Judge's determination that Plaintiff did not make out a prima facie case of a hostile work environment claim.  Defendant's motion for summary judgment

is granted as to this issue.

2.     Disparate Treatment.   Plaintiff next asserts that she was subjected to disparate treatment on account of her race and gender when she was demoted.

Disparate treatment occurs when an employer treats certain people less favorably than others on the basis of a protected classification such as race.  International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977)).  To succeed, Plaintiff must demonstrate that (1) she is a member of a protected class; (2) the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) she suffered more severe discipline for her misconduct as compared to those employees outside the protected class. See Tabor v. Freightliner of Cleveland, LLC, 388 F. App'x 321, 322 (4th Cir. 2010) (citing Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir.1993)).  In establishing a prima facie case, Plaintiff must present evidence of similarly-situated comparators, persons who evince "'enough common features between the individuals to allow [for] a meaningful comparison.'"  See Haywood v. Locke, 587 F. App'x 355, 360 (4th Cir. 2010) (quoting Humphries v. CBOCS West, Inc., 474 F.3d 387, 406 (7th Cir. 2007)).   The similarly situated requirement normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.  Humphries, 474 F.3d at 404-05.

If Plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate a legitimate, non-discriminatory reason for the employment action.  Id. at 322-23 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  Once an employer rebuts the prima facie case with a legitimate, nondiscriminatory reason for the employment action, "'the McDonnell Douglas

framework-with its presumptions and burdens-disappear [s], and the sole remaining issue [is] discrimination vel non.'" <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310, 318 (quoting <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142-43 (2000)).

The Magistrate Judge determined that Plaintiff failed to make out a prima facie case because she failed to identify similarly-situated employees outside of the protected class who were treated more favorably than she. In so doing, the Magistrate Judge addressed Plaintiff's alleged comparators, Forde Claffy, Betty Jo Sanders, Bobbie Stevenson, and Wendell Gulledge, as observed as follows:

- <u>Forde Claffy</u> (white male) held Gulledge's position prior to Gulledge being hired. It appears from the record that he was the subject of a criminal investigation for accessing pornography on Defendant's computers. Claffy was terminated. Thus, the Magistrate Judge found that Claffy was neither similarly situated to Plaintiff nor treated more favorably.

- <u>Betty Jo Sanders</u> (white female) was demoted but retained the salary she had been paid prior to her demotion. However, Sanders was demoted from a permanent position, unlike Plaintiff, who was demoted while she was still in a probationary period. Butler testified that state regulation requires Defendant to maintain the salary of an employee in a permanent position for two years. Deposition of Patricia Butler 94, ECF No. 56-2. The Magistrate Judge found that Sanders was not similarly situated to Plaintiff.

- <u>Bobbie Stevenson</u> (white female) was named by Plaintiff as a valid comparator because she once threw a book at her supervisor and was not demoted. The Magistrate Judge found that Stevenson was not a valid comparator because she was not in a supervisory position, and she was not supervised by Gulledge.

- <u>Wendell Gulledge</u> (white male) was named by Plaintiff as a valid comparator because he lost his supervisory role but retained his salary. The Magistrate Judge noted that Gulledge lost Plaintiff's supervisory role because of Plaintiff's insubordination and demotion, and not because of any conduct on his part. Thus, he was neither disciplined nor demoted. The Magistrate Judge determined that Gulledge was not similarly situated to Plaintiff.

The Magistrate Judge further found that, even if Plaintiff had made out a prima facie case, Defendant set for a legitimate, nondiscriminatory reason for her demotion, i.e., she had behaved in an insubordinate and confrontational manner to her supervisor. The Magistrate Judge determined that the record is devoid of any allegations that Plaintiff's gender or race accounted for any portion of the decision.

In her objections, Plaintiff contends that the comparators are similarly situated because the ultimately reported to Susan Smith. Plaintiff seems to suggest that Smith was responsible for her alleged disparate treatment when compared to Claffy, Sanders, Stevenson, or Gulledge. Plaintiff further argues that the speed and harshness of the actions taken against her were evidence of pretext, particularly given that Defendant could have extended her probationary period to allow her an opportunity cure her deficiencies. According to Plaintiff, the real difference between the comparators and Plaintiff is that she is the only African American female amongst them.

The court is not persuaded. The court concurs in the Magistrate Judge's determination that Plaintiff has not established the existence of similarly situated employees that were disciplined less severely than she was. Moreover, Plaintiff has presented no evidence of discriminatory animus regarding Smith. During her deposition, Plaintiff acknowledge that Smith (white female), Kelly (white female), and Butler (black female) all agreed with the decision to demote Plaintiff. Deposition of Sebrena Hammett 237-38, ECF No. 56-5. Plaintiff further testified:

Q.     . . . . You still believe this is discriminatory even though Linda, Susan, and
        Pat agree with it?

A.     Yes.

       . . . .

19

Q.    Do you believe Susan Smith discriminated against you based on your gender?

A.    I believe Susan Smith discriminated against me because of many reasons.

Q.    What are those reasons?

A.    One of them was because of me being military.  The other was just because she is very manipulative.  She believes someone.  If a supervisor goes to her and says remove Sebrena, she'll do it.

Q.    She's easily influenced.

A.    Yes.

Q.    Why do you think she discriminated against you based on your military service?

A.    I worked with Susan long before I worked with Wendell Gulledge.  Susan didn't even know any Microsoft Office before she got there and I taught her that.

Q.    How does that evidence discriminate you, Ms. Hammett?

A.    Because if Wendell Gulledge told her to remove me, she's going to do it.

Q.    That's not discrimination.  That's her being easily influenced, is that right?

A.    I don't think so.

Id. at 238-37, ECF No. 56-5.

Plaintiff has failed to establish a prima facie case of disparate treatment.  Even if Plaintiff did meet her burden, Defendant has proffered a legitimate, nondiscriminatory reason for Plaintiff's demotion.  The record is devoid of evidence that Defendant's true reason for demoting Plaintiff was because of her race or gender.  Defendant's motion for summary judgment is granted as to this issue.

C.    Claim of Retaliation in Violation of Title VII

Plaintiff contends that she was retaliated against for exercising her rights under Title VII.

20

Title VII makes it unlawful for an employer to discriminate against an employee because that employee "has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

To prevail on a Title VII retaliation claim, Plaintiff must show that: (1) she engaged in a protected activity; (2) an adverse employment action was taken against her; and (3) there was a causal connection between the first two elements. See Duncan v. Commonwealth of Virginia Dep't of Corrections, 9 F. App'x 236, 238 (4th Cir. 2001) (citing Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 754 (4th Cir.1996). If Plaintiff establishes a prima facie case, the burden shifts to Defendant to produce evidence of a legitimate, non-retaliatory reason for the adverse action. See id. (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)). If Defendant meets this burden, Plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual, and that his termination was motivated by discrimination. See id. (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000)).

The Magistrate Judge observed, among other things, that Plaintiff stated on February 10, 2009 that she planned to file an EEOC complaint for discrimination. However, the record supports a finding that the decision to demote Plaintiff was made by February 9, 2009, prior to Plaintiff's protected activity. See Request for Consideration of a Health Services Position approved by James Gibson, Bureau Director, on February 9, 2009 (ECF No. 59-35) (stating that "Reclassification of employee's position is desired as a result of several incidents during employee's probationary (or trial) period after the Employee Performance and Development Plan (EPDP) was prepared and signed. Request salary to be adjust to $24,979, which was the employee's salary prior to reclass to

Administrative Coordinator I."). The Magistrate Judge determined that Plaintiff failed to establish a causal connection between her statement and the decision to demote her, because the decision was made prior to her protected activity.

In her objections, Plaintiff contends that she may have engaged in protected activity prior to February 9, 2009. Assuming for purposes of summary judgment that Plaintiff engaged in protected activity prior to February 9, 2009, and that the decision makers involved in her demotion were aware of her protected activity, see Baqir v. Principi, 434 F.3d 733 (4th Cir. 2006), the court concludes that there is no evidence that Defendant's proffered reason for demoting Plaintiff was in retaliation for engaging in protected activity. As discussed hereinabove, Plaintiff's negative conduct commenced with Gulledge's statement that he had obtained peer review surveys and his counseling her regarding studying at her desk. Plaintiff was counseled about her behavior but continued to act in an insubordinate manner toward Gulledge. There simply is no evidence that Defendant's proffered reason for demoting Plaintiff was a pretext for retaliation.

D.    Claims Under South Carolina Human Affairs Law

Plaintiff also asserts that Defendant violated her rights under the South Carolina Human Affairs Law, S.C. Code Ann. §§ 1-13-10 et seq. Section 1-13-80(A)(1) makes it an unlawful employment practice "to fail or refuse to hire, bar, discharge from employment or otherwise discriminate against an individual with respect to the individual's compensation or terms, conditions, or privileges of employment because of the individual's race, religion, color, sex, age, national origin, or disability."

The Magistrate Judge noted that the South Carolina Human Affairs Law does not provide for a distinct cause of action from Title VII. See S.C. Code Ann. § 1-13-100 ("Nothing in this

chapter may be construed to create a cause of action against a person not covered by Title VII of the Civil Rights Act of 1964, as amended, 42 U. S. C. Section 2000e et seq., if the cause of action arises from discrimination on the basis of race, color, religion, sex, or national origin.").  Therefore, the Magistrate Judge recommended that Defendant be granted summary judgment as to this cause of action.

Plaintiff contends that her state law claims could still proceed even if her federal claims are dismissed on the grounds that the federal and state statutes at issue are similar, but not identical.  In support of her argument, Plaintiff relies upon Gleaton v. Monumental Life Ins., 719 F. Supp. 2d 623 (D.S.C. 2010).  In that case, the court denied a motion to dismiss the plaintiff's cause of action under the South Carolina Human Affairs Law, noting that Plaintiff's federal claims could be dismissed for some procedural or other reason that would not apply to the state law claims.  Gleaton is distinguishable from the within action, where the court has reached the merits of Plaintiff's race and gender discrimination allegations.  For the reasons stated hereinabove regarding Plaintiff's Title VII causes of action, Defendant's motion for summary judgment is granted as to Plaintiff's cause of action for violation of the South Carolina Human Affairs Law.

## III.  CONCLUSION

The court adopts the Magistrate Judge's Report and Recommendation.  For the reasons stated, Defendant's motion for summary judgment is **granted** as to all but Plaintiff's First and Second Causes of Action alleging violations of USERRA.  Plaintiff' claims under USERRA hereby

are **remanded** to the Court of Common Pleas for Richland County, South Carolina.  Defendant's

motion to dismiss is **denied.**

      **IT IS SO ORDERED**.

                    /s/ Margaret B. Seymour
                    Senior United States District Judge

Columbia, South Carolina

March 28, 2013